CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JUL 29 2022
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| DEBORAH MCKAGUE, | ) |
| | ) |
|     Plaintiff, | )   Case No. 4:22cv00018 |
| | ) |
| v. | )   **MEMORANDUM OPINION** |
| | ) |
| HSCGP, LLC and DANVILLE | )   By:   Hon. Thomas T. Cullen |
| REGIONAL MEDICAL CENTER, LLC | )          United States District Judge |
| d/b/a SOVAH HEALTH – DANVILLE, | ) |
| | ) |
|     Defendants. | ) |

The Americans with Disabilities Act ("ADA") guarantees that disabled citizens have the right to participate fully in all aspects of our society, including the health-care system, and broadly prohibits discrimination against those with disabilities. Because communication is vital to making informed healthcare decisions, individuals with hearing impairments face high hurdles when they (or their loved ones) seek emergency medical treatment. Plaintiff Deborah McKague is one such individual, and she claims that, during multiple visits to Defendants HSCGP, LLC, and Sovah Health – Danville's facility ("the Hospital") for medical care for herself and her husband, she was denied—or provided with ineffective—accommodations for her deafness, which prohibited her from participating fully in her and her husband's medical-care decisions. McKague now seeks a preliminary injunction to ensure that, if and when she returns to the Hospital during the pendency of this litigation, her federal rights under the ADA will be enforced. But for the reasons stated below, she has failed to meet the high burden required for preliminary injunctive relief.

## I. BACKGROUND

McKague is "profoundly deaf" and claims that, during visits to the Hospital for her and her husband's care, the Hospital did not provide (or provided ineffective) means for her to communicate with the nurses and physicians, making it difficult or impossible for her to participate fully in her and her husband's care. (Am. Compl. ¶¶ 15, 18–24 [ECF No. 20].) For example, McKague alleges that the Hospital did not provide interpretative services during visits on March 11 and 20, 2018. (*See id.* ¶¶ 25–26.) She also alleges that, although the Hospital provided her with Video Remote Interpreting ("VRI") during her visit on July 8, 2019, that technology "did not work, had poor video quality, frequently froze and disconnected, and was not an effective means of communication." (*Id.* ¶¶ 29–30.) All told, she alleges that the Hospital failed to provide her with an effective means of communication—or any means of communication at all—on at least 25 visits to the Hospital. She seeks a declaratory judgment, permanent injunction, compensatory damages, nominal damages, attorneys' fees and costs, and "[a]ny and all other relief that this Court deems just and proper." (*Id.* ¶ D (Prayer for Relief).)

McKague also seeks a preliminary injunction requiring the Hospital "to immediately provide [her] with either on-site certified American Sign Language ('ASL') interpreters or ASL interpreters through Video Remote Interpreting ('VRI') services and technology when [she] seeks healthcare treatment at [the Hospital] and when [she] is a companion to her husband seeking healthcare treatment at [the Hospital]." (Mot. Prelim. Inj. at 1, May 26, 2022 [ECF No. 8].) The Hospital argues that McKague lacks standing to seek a preliminary injunction and that, even if she does have standing, she has failed to establish the elements required for

issuance of a preliminary injunction. The parties fully briefed this issue, and the court heard oral arguments on McKague's motion on July 6, 2022, making the matter is ripe for disposition.

The Hospital has filed a motion to strike McKague's request for emotional distress damages from her complaint. (ECF Nos. 10 & 23.) The parties have fully briefed this motion, and their positions are adequately set forth in their pleadings. Accordingly, the court will dispense with further oral argument and rule on the basis of the parties' written submissions.

## II. STANDARD OF REVIEW

*A. Preliminary Injunction*

The purpose of a preliminary injunction is to preserve the status quo pending a final trial on the merits. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999) (citation omitted). The factors necessary for the grant of a preliminary injunction are well-settled. In order to receive a preliminary injunction, a plaintiff must show that: (1) she is likely to succeed on the merits of her underlying claim; (2) there is a likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities favors preliminary relief; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). This showing must be made by a preponderance of the evidence. *See UBS Painwebber, Inc. v. Aiken*, 197 F. Supp. 2d 436, 440 (W.D.N.C. 2002).

In addition to the merits of her request, the Hospital also challenges, as a threshold matter, McKague's standing to seek a preliminary injunction. "On a motion for a preliminary injunction, a plaintiff's 'burden of showing a likelihood of success on the merits necessarily depends on a likelihood that plaintiff has standing.'" *Action NC v. Strach*, 216 F. Supp. 3d 597,

630 (M.D.N.C. 2016) (quoting *Obama v. Klayman*, 800 F.3d 559, 565 (D.C. Cir. 2015))). A plaintiff must show three elements to establish Article III standing: (1) injury in fact, (2) causation, and (3) redressability. *Townes v. Jarvis*, 577 F.3d 543, 546–47 (4th Cir. 2009) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[T]he presence of these three elements must continue throughout the entire case, otherwise the case becomes moot." *Action NC*, 216 F. Supp. 3d at 630.

    B. *Motion to Strike*

Under Federal Rule of Civil Procedure 12(f), on its own motion or on the timely motion of a party, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[S]triking a portion of a pleading is a drastic remedy." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). Accordingly, such motions are "generally viewed with disfavor." *Id.* The moving party bears the burden to show that the challenged material is prejudicial. *Hardy v. Lewis Gale Med. Ctr.*, 377 F. Supp. 3d 596, 605 (W.D. Va. 2019); *see also* 5C *Wright & Miller* § 1382 (3d. ed. 2021). Any doubt about whether the challenged material should be stricken is resolved in favor of the non-moving party. *Sturdivant v. Arc of Haywood Cnty., Inc.*, No. 1:18 cv 123; 2018 WL 2138543, at *1 (W.D.N.C. May 9, 2018); *see also* 5C *Wright & Miller* § 1382. "[T]he decision of whether to strike all or part of a pleading rests within the sound discretion of the [c]ourt." *Barnes v. District of Columbia*, 289 F.R.D. 1, 6 (D.D.C. 2012). "[A]bsent a strong reason for doing so, courts will generally not tamper with pleadings." *Nwachukwu v. Karl*, 216 F.R.D. 176, 178 (D.D.C. 2003) (cleaned up).

### III.   DISCUSSION

*A. Preliminary Injunction*

Because standing necessarily precedes any discussion of the merits of McKague's claims, the court will address the Hospital's standing argument first.

Under Article III of the United States Constitution, the jurisdiction of federal courts is limited to actual cases and controversies. *See Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)). The doctrine of "standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560. To satisfy the constitutional requirements for standing, a plaintiff must demonstrate that "1) he or she suffered an 'injury in fact' that is concrete and particularized, and is actual or imminent; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) the injury likely will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Gaston Cooper Recycling Corp.*, 629 F.3d 387, 396 (4th Cir. 2011). An "injury in fact" is a harm that is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. "In the context of an action seeking injunctive relief pursuant to the ADA, a plaintiff can only satisfy the injury-in-fact element of standing where the plaintiff alleges facts 'giving rise to an inference that [s]he will suffer future discrimination by the defendant.'" *Nat'l All. for Accessibility, Inc. v. Tunnel Rd. (E & A) Ltd. Liability Co.*, No. 1:10cv282, 2011 WL 1791293, at *3 (W.D.N.C. Apr. 8, 2011) (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2011)).

The Hospital contends that the likelihood that McKague will return to its emergency room is speculative, meaning that any alleged injury is not actual or imminent. To be sure, "[i]ntent to return to the place of injury 'some day' is insufficient" to establish standing for

injunctive relief. *Small v. Gen. Nutrition Cos., Inc.*, 388 F. Supp. 2d 83, 87 (E.D.N.Y. 2005). But past is prologue, and McKague's long history of receiving emergency medical care at the Hospital informs the court's analysis of the likelihood that McKague will return in the near future.

"Courts in the Fourth Circuit . . . require that a plaintiff evidence a specific intent to return to a facility in order to establish standing for injunctive relief." *Basta v. Novant Health Inc.*, No. 3:19-cv-00064, 2019 WL 3310098, at *4 (W.D.N.C. July 23, 2019) (collecting cases). McKague alleges that her and her husband's "chronic and debilitating health issues" make a return trip to the Hospital a virtual certainty and, although she alleges they are victims of discrimination at the Hospital, she nevertheless professes an intent to return to the facility because it is the closest emergency care facility to their home. (*See* Aff. of Deborah McKague ¶¶ 1, 4, 9, May 25, 2022 [ECF No. 8-2]; Am. Compl. ¶ 104.)

McKague's amended complaint details the couple's past history of repeated visits to the Hospital and depicts two individuals in frequent need of emergency medical treatment.[1] Moreover, given the geographic proximity of the Hospital to McKague's home and her statement that she "intends to continue visiting the Hospital given (1) the lack of alternative hospital emergency rooms in the area and (2) the fact that the Hospital has access to and knowledge of her and her husband's extensive medical records and issues" (Am. Compl. ¶ 104; *see also* McKague Aff. ¶ 1 (adopting allegations in her complaint)), the court finds that

---

[1] McKague has not attempted to describe the nature of her or her husband's health issues, making it virtually impossible for the court to undertake a fully informed analysis of her claim that they will need emergency care in the future. Additionally, McKague does not allege an ongoing treatment relationship with any particular physician or provider at the Hospital. The court would have preferred a more fulsome explanation of McKague's medical issues or treatment needs—even under seal, if necessary—to the scant allegations included in her pleadings. Nevertheless, for the reasons discussed, McKague has established the requisite standing.

McKague has alleged facts indicating a sufficient intent to return to the Hospital and a likelihood that she will need to do so, meaning that her alleged future harm is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. McKague therefore has standing to bring a claim for injunctive relief.

But McKague does not satisfy the elements of her request for a preliminary injunction. Specifically, she has not shown that she faces a likelihood of irreparable harm in the absence of injunctive relief.

In the context of a preliminary injunction, "[i]rreparable injury must be *likely*, rather than just possible." *Canada v. Dannin*, No. 7:10cv00432, 2011 WL 2600578, at *2 (W.D. Va. June 29, 2011) (citing *Winter*, 555 U.S. at 21). "In determining what is considered irreparable harm, the key word is irreparable." *Doe v. Pittsylvania Cnty., Va.*, 842 F. Supp. 2d 927, 932 (W.D. Va. 2012) (internal quotation omitted). "'Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.'" *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)); *see also Hughes Network Solutions, Inc. v. InterDigital Comm. Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) ("Where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable.").

McKague's request for a preliminary injunction fails for two primary reasons. First, the Hospital has presented uncontested affidavits that McKague declined functioning VRI technology at each of her last two visits. (*See* Decl. of Dr. Ramon Gomez ¶¶ 5–7, June 21, 2022 [ECF No. 22-2]; Decl. of Meryl Barts ¶¶ 6–7, 10–12, June 20, 2022 [ECF No. 22-3].)

These affidavits indicate that the Hospital can and does provide functioning accommodations, which undercuts McKague's claim that she will be harmed, let alone irreparably so, upon her return to the Hospital.

Second, McKague admits that she has an application (or "app") on her phone that gives her immediate, real-time access to a live interpreter—an app that she has used during past visits to the Hospital when either the VRI was not working to her satisfaction or when she feared the VRI would not work and chose, instead, to use her app. This app, which costs $1.00 per minute (Am. Compl. ¶ 43), allows McKague to participate fully in her medical care, as she "used this . . . app to communicate with doctors, nurses, and other of [the Hospital's] staff" during past visits. (*Id.*; *see also* Gomez Decl. ¶ 6 (detailing McKague's successful use of the app during treatment on June 14, 2022).) Upon learning that McKague felt obligated to use this app and pay for it during a visit, the Hospital offered to reimburse her for any expenses incurred as a result. (*See* ECF No. 22-4.) The Hospital stated that, although it offers VRI to its patients at no cost and that McKague is not expected to have to provide her own interpretive services, she is nevertheless "free to do so." (*Id.*) In the event she chooses to do so and incurs any costs, the Hospital will reimburse her. Therefore, if McKague returns to the Hospital and *needs* or *elects* to use her personal device, instead of the VRI, the Hospital will reimburse her for those expenses.[2]

Based on the evidence before the court, it is clear that, if McKague returns to the Hospital and appropriate interpretative accommodations are either not available or not

---

[2] The court also notes that McKague's out-of-pocket expenses to compensate for unavailable or malfunctioning VRI are paradigmatic compensatory damages, should she prevail on her claim.

provided, she can use the app on her phone and be reimbursed for any expenses incurred for its use. Accordingly, she has not shown a likelihood of irreparable harm in the absence of injunctive relief. *Cf. Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551–52 (4th Cir. 1994) (noting that irreparable harm is suffered "when monetary damages are difficult to ascertain or are inadequate"). Her request for a preliminary injunction will be denied.

    *B. Motion to Strike*

The Hospital asks this court to strike from McKague's complaint her request for emotional distress damages because those damages are not available under either of the causes of actions she asserts. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1576 (2022) (holding that emotion distress damages are not recoverable in private actions to enforce the antidiscrimination provisions of the Affordable Care Act); *Israel v. Cerjan*, No. 2:00cv457, 2001 WL 34826230, at *3 (E.D. Va. June 12, 2001) ("The only remedy available under Title III of the ADA is injunctive relief.").

The Hospital's motion will be denied. Rule 12(f) is "unavailable as a tool to strike the claim for emotional distress damages here." *Bocock v. Specialized Youth Servs. of Va., Inc.*, No. 5:14cv00050, 2015 WL 1611387, at *3 (W.D. Va. Apr. 10, 2015). As Judge Elizabeth Dillon explained:

> Rule 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy . . . .'" Clearly a request for relief is not an insufficient defense, is not redundant, and is not scandalous, nor have defendants argued that it is. Likewise, defendants have not argued that the request for relief here is immaterial or impertinent. . . .

> None of the terms of Rule 12(f), therefore, allow the striking of the plaintiff's demand for emotional distress damages.

*Id.* (quoting *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) )). Because Rule 12(f) is an improper vehicle for the relief sought (and for other valid reasons, *see id.*), the Hospital's motion will be denied.

## IV. CONCLUSION

Although McKague has standing to seek injunctive relief, she has failed to show a likelihood of irreparable harm in the absence of such relief. Accordingly, her motion for a preliminary injunction will be denied.

Because a motion to strike under Rule 12(f) is not a proper vehicle to attack a request for damages, the Hospital's motion will also be denied.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 29th day of July, 2022.

>   */s/ Thomas T. Cullen*
>   HON. THOMAS T. CULLEN
>   UNITED STATES DISTRICT JUDGE